**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Somaltus, LLC,** | ) | **CASE NO. 1:17 CV 1111** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **The Noco Company,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

## INTRODUCTION

This matter is before the Court upon Defendant The Noco Company's Motion to Find the Case Exceptional and Award Fees and Costs (Doc. 48). This is a patent infringement case. For the reasons that follow, Defendant's motion is DENIED.

## FACTS

Plaintiff Somaltus LLC brought this lawsuit against Defendant The Noco Company, alleging patent infringement. At issue in the case was whether Defendant's Genius G750 battery charger (the "Charger") infringed U.S. Patent No. 7,657,386 (the "'386 Patent"). The '386

1

Patent is entitled "Integrated Battery Service System" and it discloses and claims methods and systems for charging batteries. Claim 8 of the '386 Patent describes "a method for controlling a charge signal for charging a battery," that requires several steps. The last of these steps is:

> altering the charge signal by adjusting an on/off period of an AC [alternating current] power source to a transformer coupled to the battery.

(Doc 1-2; PageID# 28).

Defendant argued throughout the litigation that the Charger did not implicate the last step of claim 8 of the '386 Patent. More specifically, Defendant argued that the Charger did not utilize an "alternating current." Rather, it selectively applied a "direct current" signal to a transformer. Although the parties dispute the exact nature of their communications, the record reflects that early in the litigation, Defendant's counsel informed Plaintiff's counsel that the Charger did not infringe claim 8 of the '386 patent because the Charger "relies on an adjustment of the DC [direct current] voltage, in contrast to controlling the on/off period of an AC [alternating current] power source." (Doc. 50-4, PAGEID# 415). Plaintiff's position, however, was that although the output of the Charger may be direct current, the input was still alternating current. Thus, as Plaintiff explained to Defendant, "when DC output voltages are altered, presumably the AC power side is also adjusted." (*Id*. at 416). Plaintiff's position was that the charger, therefore, did implicate claim 8 of the '386 patent. Plaintiff did not request, nor did Defendant provide, any evidence to support Defendant's non-infringement position.

The parties proceeded with the litigation. Defendant served its non-infringement contentions on September 25, 2017, and attached a technical drawing referred to as the "G750 Schematic," which supported Defendant's non-infringement position. On November 22, 2017, Plaintiff voluntarily dismissed the lawsuit.

2

Defendant moves the Court to find this case exceptional and to award Defendant attorneys' fees and costs, pursuant to 35 U.S.C. § 285. In support of its motion, Defendant argues that Plaintiff failed to perform a reasonable pre-filing inquiry and filed a frivolous lawsuit as a result. Further, Defendant argues that Plaintiff pursued "settlement-driven" litigation and made no effort to determine the validity of its claims upon learning Defendant's non-infringement position. Plaintiff opposes the motion, arguing that it conducted a reasonable pre-filing inquiry and voluntarily dismissed the litigation as soon as it received evidence supporting Defendant's non-infringement position. For the following reasons, Defendant's motion is DENIED.

**ANALYSIS**

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The analysis under § 285 is a two-step process. First, the "prevailing party" in the litigation must establish that the case is exceptional. *Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1327 (Fed. Cir. 2003). An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1756 (2014). In evaluating whether a case is exceptional under the totality of the circumstances, the district court should consider, among other factors, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756, n. 6. If the case is deemed exceptional, the

3

court must determine whether an award of fees is appropriate, and if so, the amount to be awarded. *Forest Labs., Inc.,* 339 F.3d at 1328.

The parties do not dispute that Defendant was the "prevailing party" in this litigation. Thus, the burden is on Defendant to establish that this case is "exceptional" such that fees should be awarded under § 285. Defendant first argues that this case should be deemed exceptional because Plaintiff failed to conduct a reasonable pre-suit investigation. Specifically, Defendant argues that Plaintiff had a duty to purchase and test the Charger prior to filing suit. Defendant also argues that Plaintiff made no effort to substantiate its position during the litigation. Plaintiff responds that it conducted a reasonable pre-suit investigation by preparing a claim chart based on publicly available information pertaining to the Charger, specifically the Owner's Manual and the User Guide. Further, Plaintiff argues that it conducted itself properly during the litigation and that Defendant did not provide evidence supporting its non-infringement argument until it served the G750 Schematic in the fall of 2017.

Upon review, the Court agrees with Plaintiff. Plaintiff presents evidence that its attorney conducted an infringement analysis prior to filing suit by reviewing the '386 Patent and its prosecution file history, Plaintiff's claim chart based on the Charger, and other publicly available information about the Charger, including the Owner's Manual and User Guide, which contain technical and battery specifications for the product. (Doc. 53-1, ¶¶ 6-10). Defendant argues that this was insufficient and that the Federal Circuit's holding in *Judin v. U.S.,* 110 F.3d 780, 784 (Fed. Cir. 1997) required Plaintiff to purchase a product sample prior to filing suit. In *Judin*, the Federal Circuit held that the trial court abused its discretion by denying a motion for sanctions when the record showed that plaintiff had not obtained or attempted to obtain a sample

4

of the accused device. *Id.* However, obtaining a sample of the infringing product is not a bright-line requirement to filing a patent infringement claim. *See Intamin Ltd. v. Magnetar Techs., Corp.,* 483 F.3d 1328, 1338 (Fed. Cir. 2007) ("*Judin* did not create a blanket rule that a patentee must obtain and thoroughly deconstruct a sample of a defendant's product to avoid violating Rule 11."); *PrinterOn Inc. v. BreezyPrint Corp.,* 93 F. Supp. 3d 658, 710 (S.D. Texas 2015) (same). Rather, the "key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis," which "can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-Pharma,* 360 F.3d at 1302 (affirming a district court's denial of sanctions on a patentee who "could have easily performed a chemical analysis of the accused product" but did not do so). Here, Plaintiff conducted an infringement analysis which included an informed comparison of the claims of the '386 Patent against the publicly available information regarding the Charger. Under the Federal Circuit case law, this is sufficient to constitute an adequate pre-filing investigation.

Defendant also argues that Plaintiff engaged in "settlement-driven" and "predatory" litigation and that Plaintiff's primary goal was to "extract a nuisance settlement." In support of this argument, Defendant states that Plaintiff should have requested the G750 Schematic rather than suggesting settlement early in the case. Defendant also provides evidence that Plaintiff filed eleven boilerplate complaints against eleven entities, including Defendant, in 2017. Eight out of those eleven cases have been voluntarily dismissed by Plaintiff. Defendant cites *Lumen View Tech., LLC v. Findthebest.com, Inc.,* 24 F. Supp. 3d 329 (S.D.N.Y. 2014) and *Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232 (S.D.N.Y. 2016) to support its argument. In

response, Plaintiff argues that it did not know that the G750 Schematic existed and therefore could not request it. Further, Plaintiff argues that the fact that it sued multiple defendants based upon the '386 Patent does not render this case exceptional.

Upon review, the Court agrees with Plaintiff. With regard to the G750 Schematic, Plaintiff could not have requested evidence that it did not know existed. Shortly after Plaintiff received that evidence (and before the parties engaged in any substantive briefing), Plaintiff voluntarily dismissed the case. Plaintiff's early settlement demand prior to receiving the G750 Schematic does not indicate bad faith. Additionally, the cases cited by Defendant involved different circumstances than those present here. Unlike Plaintiff here, the plaintiffs in *Lumen View* and *Gust* only dismissed their cases after significant briefing by the parties. *See Lumen View,* 24 F. Supp. 3d at 334 (case dismissed after claim construction briefing); *Gust,* 226 F. Supp. 3d at 238-39 (case dismissed after prolonged litigation in two venues and dispositive motion briefing). Further, the courts in *Lumen View* and *Gust* found that the lawsuits at issue were "frivolous" and "objectively unreasonable." *See Lumen View*, 24 F. Supp. 3d at 335; *Gust*, 226 F. Supp. 3d at 241. As discussed above, the Court has not made that finding here.

The Court agrees with Defendant, however, that it is concerning that Plaintiff appears to have filed eleven boilerplate complaints based on this patent, only to voluntarily dismiss eight of them. (Doc. 50-3). Nevertheless, the Court notes that the complaints are not identical, as Defendant argues, because the allegations in the complaints vary (albeit only slightly) based upon the literature reviewed by Plaintiff in each case. *See, e.g. Somaltus LLC v. Cummins, Inc. and Cummins Power Generation, Inc.,* No. 2:17-cv-00034 (E.D. Tex. Jan. 12, 2017) (ECF No. 1 ¶¶ 14-17); *Somaltus LLC v. Johnson Outdoors, Inc.,* No. 17-cv-201 (E.D. Tex. Mar. 14, 2017)

(ECF No. 1 ¶¶ 14-16); *see also* Doc. 1 ¶¶ 12-18.  When determining whether a case is exceptional under § 285, this Court must consider the "totality of the circumstances."  *Octane Fitness,* 134 S. Ct. at 1756 (2014).  Plaintiff's multiple filings based upon the '386 patent last year, while troublesome, do not elevate this case to that level.

Because Defendant has not established that this case is exceptional, the Court declines to award fees under § 285.  Defendant's motion is denied.

**CONCLUSION**

For the foregoing reasons, Defendant The Noco Company's Motion to Find the Case Exceptional and Award Fees and Costs is DENIED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 3/27/18